**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Craig A. Franks, | |
| Plaintiff | No.3:17-CV-00961 |
| v. | (Judge Richard P. Conaboy) |
| Nancy A. Berryhill<br>Acting Commissioner of<br>Social Security,<br>    Defendants | |

---

**MEMORANDUM**

**I.    Procedural Background.**

We consider here Plaintiff Craig A. Franks' appeal from an adverse decision of the Social Security Administration ("SSA") or ("Agency") regarding his application for Disability Insurance Benefits ("DIB"). Plaintiff's application was initially denied at the administrative level on December 20, 2013 whereupon he filed a written request for a hearing. A hearing was held on May 12, 2015 before Administrative Law Judge ("ALJ") Gerard W. Langan. On September 3, 2015 the ALJ issued a decision denying Plaintiff's application for benefits. The ALJ's decision was approved by the Appeals Council by letter dated April 5, 2017. The Appeals Council's letter constitutes a final decision and vests this Court with jurisdiction pursuant to 42 U.S.C. § 405g.

**II.    Testimony before the ALJ.**

A hearing was conducted in Wilkes-Barre, Pennsylvania on May 12, 2015. ALJ Langan presided and heard testimony from the Plaintiff and a Mr. Keating, a vocational expert ("VE"). The testimony may be summarized as follows.

Plaintiff resides in Athens, Pennsylvania with his girlfriend and his daughter who was two years of age on the date of the hearing. Plaintiff stands five feet eleven inches tall and weighs one hundred and seventy eight pounds. He was born August 17, 1964. He completed high school in a regular class and then went into the navy. He was honorably discharged from the navy. (R. 41-42).

Plaintiff briefly recounted his work history from 2000 to 2015. In 2000 he worked at a machine shop building small parts that weighed five to ten pounds. This work was performed while standing. He then performed similar work for a succession of employers for a period of years and then worked for a time for a firm that installed rolled roofing. Later he worked for Ingersoll Rand as a machinist who setup and ran various machines. This work was heavier in nature and involved lifting twenty to twenty-five pounds at times while standing. He then worked at Amco Manufacturing doing the same type of work until he became disabled in May of 2012. After a period of inactivity, he attempted to return to work at a landscaping business but after working there for three months he resigned because the

work was physically too demanding and his hands were going numb. At the time of his hearing, Plaintiff was not receiving unemployment compensation benefits or any military pension. (R. 42-46).

Plaintiff testified that he cannot work because of general fatigue and pain from his neck down to his feet. Even walking several hundred feet out to his mailbox is tiring for him. He gets very minimal sleep. Various medicines that he takes produce side effects including blurred vision, diarrhea, drowsiness, and fatigue. (R. 46-49). Plaintiff stated that he typically spends his days sitting in the house with his daughter. His cooking is limited to heating things in a microwave oven. He does not do laundry, cut grass, or shovel snow. His sons take care of those tasks. He has not driven a car since 2012. He goes grocery shopping with his girlfriend and helps to the extent he is able. He testified that he can lift a gallon of milk with difficulty. He can sit for fifteen minutes to one half hour before his legs begin to go numb. He then must stand for five to ten minutes until the feeling returns to his legs. He estimates that he can stand for up to thirty minutes at a time. He estimates further that he can walk about one hundred yards before he would need to take a break. (R. 49-51).

On questioning by his attorney, Plaintiff spoke about pain in his hands. He described the pain as constant. His medication

"takes the edge off" but does not completely control the pain. He stated that he cannot use as much of the medicine as he might like because he must be alert to watch his two year old daughter. He testified that he was going to have nerve conduction studies related to his carpal tunnel syndrome before undergoing surgery. His carpal tunnel syndrome affects both hands. His hand problems make it difficult for him to handle small objects. He can no longer solder things or repair his own glasses - - things he was formally able to do. He needs assistance to dress and to wash his hair because pain in his shoulders limits his ability to lift his hands over his head. This difficulty to lift his hands is bilateral. His use of his right arm is also limited by a torn bicep. (R. 51-54).

Plaintiff reiterated his earlier testimony that he can stand for about thirty minutes but added that standing any longer causes his feet to go numb and his legs to shake. His difficult sleeping makes it necessary to nap each day for about one and one-half hours. He accomplishes this by napping at the same time as his daughter. As a side effect of his medications he must go to the bathroom six to eight times per day. Despite the frequency of these visits he sometimes has "accidents". (R. 54-55).

Mr. Keating, a vocational expert, also testified. He stated that he had reviewed Plaintiff's work history and that his

testimony would be consistent with the Dictionary of Occupational Titles. In response to questions from Mr. Keating, Plaintiff stated that his long series of jobs as a machinist never involved the need to do heavy work such as fixing machines that had broken down by climbing inside them. His jobs were lighter exertional level and involved running machines during the production process. He learned his various jobs as a machinist while doing them and without benefit of any vocational schooling as a machinist. (R. 58-60). Mr. Keating stated that Plaintiff was considered a "younger individual" on his alleged onset date in May of 2012. He characterized Plaintiff's various machinist jobs as skilled, light exertional level employment. Plaintiff's employment as a roofer qualified as skilled, heavy exertional work. Mindful of Mr. Keating's assessment of Plaintiff's work history, the ALJ asked Mr. Keating a hypothetical question in which he was to assume the following: a person of the same educational level, age, and work experience as Plaintiff; a person who could perform light work with additional limitations including avoidance of unprotected heights and industrial machinery; the inability to climb ropes, ladders, or scaffolds; only occasional climbing of ramps or stairs; and only occasional exposure to temperature extremes, humidity, wetness, and vibration. Based on the limitations imposed by the hypothetical question, Mr. Keating testified that

Plaintiff would be unable to perform any of his past relevant work. Mr. Keating testified also that a person that fits the profile of the hypothetical claimant would be capable of performing various jobs that exist in significant numbers in the national economy. These jobs included: assembler of small products; pricer; and general cashier. Each of these jobs would be categorized as "light, unskilled". (R. 61-63).

The ALJ then modified the hypothetical question to include the additional limitations such that the hypothetical claimant would need to alternate between sitting and standing every thirty minutes and would be capable of no more than occasional use of pedals or foot controls. Given these additional limitations, the VE stated that the hypothetical claimant would be unable to function as a pricer, but would be able to function as a general cashier, an assembler of small products, and as a packer, a light, unskilled job. (R. 63-64). The ALJ then altered the hypothetical question once again to include all the limitations posed in both the first and second hypothetical questions with the additional limitation that the hypothetical claimant could work only at a sedentary job. The VE stated that such a person could find work as a surveillance monitor or a document preparer. When the ALJ added the additional limitation that the hypothetical claimant would be off task more than 20 percent of the workday due to pain and the need to change

positions, the VE testified that such a person would be unable to maintain any employment. (R. 65-67).

The Plaintiff's attorney briefly examined the VE. He asked the VE to focus on the first hypothetical question that had been phrased by the ALJ and to add to that hypothetical question the limitation that the hypothetical claimant could only occasionally use both his hands to perform word activity. The VE then stated that such an individual could not sustain employment because all the jobs that he had referenced required frequent use of the hands. (R. 67-68).

## III. ALJ Decision.

The ALJ's decision (Doc. 9-2 at 11-27) was unfavorable to the Plaintiff. It included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since May 12, 2012, the alleged onset date.

3. The claimant has the following severe impairments: ankylosing spondylosis and degenerative disc disease of lumbar spine.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he must avoid unprotected heights and industrial machinery. He can never climb ropes, ladders or scaffolds but can occasionally climb ramps and stairs. He is allowed occasional exposure to temperature extremes, humidity, wetness and vibration. He is allowed occasional use of both lower extremities for the operation of foot controls or pedals and should be allowed the ability to alternate between sitting and standing every thirty minutes.

6. The claimant is unable to perform any of his past relevant work.

7. The claimant was born on August 17, 1964 and was forty-seven years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is mot material to the determination of disability because using the medical-vocational rules as a frame work supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act from May 12, 2012 through the date of this decision.

**IV. Disability Determination Process.**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

_____

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R. at 22-23).

**V.     Standard of Review.**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla". It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence
> *vel non* of substantial evidence is *not*
> merely a quantitative exercise.  A single
> piece of evidence will not satisfy the
> substantiality test if the Secretary
> ignores, or fails to resolve, a conflict
> created by countervailing evidence.  Nor is
> evidence substantial if it is overwhelmed
> by other evidence--particularly certain
> types of evidence (e.g., that offered by
> treating physicians)--or if it really
> constitutes not evidence but mere
> conclusion.  *See Cotter*, 642 F.2d at 706
> ("Substantial evidence" can only be
> considered as supporting evidence in
> relationship to all the other evidence in
> the record.") (footnote omitted).  The
> search for substantial evidence is thus a
> qualitative exercise without which our
> review of social security disability cases
> ceases to be merely deferential and becomes
> instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary

to analyze all evidence.  If she has not done so and has not

sufficiently explained the weight given to all probative

exhibits, "to say that [the] decision is supported by

substantial evidence approaches an abdication of the court's

duty to scrutinize the record as a whole to determine whether

the conclusions reached are rational."  *Dobrowolsky v. Califano*,

606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court

clarified that the ALJ must not only state the evidence

considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual

findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## VI. Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove

his claim.  *Id.*  "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837, 840 (3d Cir. 1974).  As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence.  *Dobrowolsky*, 606 F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed."  *Id.*

**B. Plaintiff's Allegations of Error.**

Plaintiff has alleged that the ALJ erred in three areas of his report. We shall consider these alleged errors in series.

**1. Whether the ALJ's decision to subordinate the opinions of treating physicians to those of consulting physicians is supported by substantial evidence?**

The parties spar over the question whether the ALJ's evaluation of the medical evidence was consistent with approved procedures in the Third Circuit. Plaintiff argues that the appropriate level of deference was not given to the opinion of a treating physician. Defendant responds that, in an appropriate case, the ALJ may subordinate the opinion of a treating

physician to that of a consulting physician and even to that of a consulting non-examining physician. This Court must decide whether the ALJ properly considered the medical evidence and comprehensively explained how he ranked the opinions of the various physicians.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. *See, E.G., Fargnoli v. Massanari,* 247 F.3d 34, 43, (3d Cir. 2001) (Citing 20 C.F.R. § 404.1527 (c)(2); *Cotter v. Harris*, 642 F. 2d 700, 704 (3d Cir. 1981). This principle is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *See also Dorf v. Brown,* 794 F.2d 896 (3d Cir. 1986). An Agency regulation addresses the weight to be given the treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of the impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R. § 404.1527 (c)(2). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a

prolonged period of time." *Morales v. Apfel*, P. 25 F.3d 310,317 (3d Cir. 2000); *See also Brownawell v. Commissioner of Social Security*, 554 F. 3d 352,355 (3d Cir. 2008). In choosing to reject a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales, supra*, at 317 (citing *Plummer v. Apfel*, 186 F.3d 422,429 (3d Cir. 1999).

The record is replete with documentation., as the ALJ acknowledged in his decision (Doc. 9-2 at 17), that the claimant has severe impairments of ankylosing spondylitis and degenerative disc disease of the lumbar spine.[2] Plaintiff's antalgic gait, limited range of motion in his back, back pain with motion, pain radiating into his right leg, and positive straight leg raising tests were documented in progress notes

---

[2] Ankylosing spondylitis is an inflammatory disease that, over time, can cause some of the vertebrae in your spine to fuse. This fusing makes the spine less flexible and can result in a hunched-forward posture. If ribs are affected, it can be difficult to breathe deeply. … Ankylosing spondylitis has no known specific cause, though genetic factors seem to be involved. In particular, people who have a gene called HLA-B27 are at greatly increased risk of developing ankylosing spondylitis. … In severe ankylosing spondylitis, new bone forms as part of the body's attempt to heal. This new bone gradually bridges the gap between vertebrae and eventually fuses sections of the vertebrae. Those parts of your spine become stiff and inflexible. Fusion can also stiffen your ribcage, restricting your lung capacity and function. www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis.

compiled by his then treating physician, Edward L. Jones of the Guthrie Clinic, between January and June of 2013. (Doc. 9-16 at 1031-34, 1042, 1046, 1050, and 1053). Dr. Jones first assessed ankylosing spondylitis in his progress notes of June 18, 2012, these notes where based upon an MRI conducted in March of 2012 which demonstrated "problems" at L4-L5 and L5-S1 suggestive of a posterior penetrating disc at L4-L5. However, Dr. Jones has not provided a physical capacities evaluation of the claimant.

The record indicates that Plaintiff lost his insurance when he stopped working in May 2012. About that time he stopped treating with Dr. Jones and sought treatment with the Veterans Administration. His treatment records resume in January of 2013 when he came under the care of Veterans Administration personnel. His treatment at the VA was provided mainly by certified physician assistants, Amber J. Perdo and Scott Weisenfluh, under the direction of Dr. Richard Eller. Dr. Eller executed a Physical Capacites Evaluation Form on May 29, 2014 in which he found, inter alia, that Plaintiff needed a sit/stand option throughout the day, could not adequately use his hands for pushing and pulling, could not use his feet for repetitive movements as in operating foot controls, suffered from disabling fatigue due to ankylosing spondylitis and the medications needed to alleviate it, suffered from disabling pain as a result of ankylosing spondylitis, and that Plaintiff's fatigue and pain

prevented him from full time employment even in sedentary positions. Dr. Eller noted the Plaintiff's degenerative disc disease had caused nerve root compression characterized by limitation of motion of the spine and positive straight leg raising tests. Dr. Eller also observed that an MRI of Plaintiff's pelvis demonstrated erosive arthropathy in that area. The ALJ gave little weight to the collective evaluations of Mr. Weisenfluh, Ms. Perdo, and Dr. Eller.

The ALJ gave more weight to the Physical Capacities Evaluation of Dr. Raphael Kon, a consulting/examining physician who saw Plaintiff on one occasion on December 5, 2013. Dr. Kon noted that his review of Plaintiff's medical records indicated "ankylosing spondylitis diagnosed in 2012 which I suspect, however, he has longer over thirty years; degenerative disc disease particularly at L4-L5 status post epidural X3." (R. at 616). His impressions included: "ankylosing spondylitis with progression of cervical, thoracic, and lumbar spine with decreased range of motion. He is in chronic pain, taking Embrel, Flexeril and Percoset." Despite these observations, Dr. Kon opined that Plaintiff had the capacity to perform full-time work at the light exertional level. The ALJ accepted Dr. Kon's assessment with the added proviso that Plaintiff would require a sit/stand option in order to work at the light exertional level.

The Court notes that all physicians agree that Plaintiff suffers from ankylosing spondylitis and degenerative disc disease of the cervical, thoracic, and lumbar spine. The physicians disagree as to the level of physical impairment caused by these conditions. Because of the previously discussed preference for the opinions of treating physicians, particularly those who have a longitudinal perspective from involvement with a patient over a protracted period of time, the ALJ must adequately explain the decision to subordinate the opinion of a treating physician to that of a consulting physician. We conclude that the ALJ's explanation here is inadequate to do so.

The evaluation of the treating physician, Dr. Eller, was buttressed by positive HLA-B27 readings. Such readings are the medical accepted diagnostic indicator for ankylosing spondylitis. Similarly, the findings of the degenerative changes at all levels of Plaintiff's spine and a herniated disc with central annular tear at L4-L5 are verified by several MRI's. The treating physicians, Jones and Eller, both noted positive straight leg raising tests on different occasions and documented limited range of motion in Plaintiff's back upon physical examination. Thus, medically acceptable clinical and laboratory diagnostic techniques support Dr. Eller's assessment of Plaintiff's physical impairments as required by 20 C.F.R. 404.1527 (c)(2). Dr. Eller's opinion has additional credence

because it was provided after a protracted period of observation and treatment. Yet, the ALJ concluded that he would give Dr. Eller's assessment "little weight" because it lacked "consistency with examination findings or diagnostic studies" and was "internally inconsistent". However, the ALJ's conclusion provides no specifics or citations to the record to demonstrate this supposed lack of examination findings or diagnostic studies nor does he identify specific "internal inconsistences" in Dr. Eller's evaluation. The Court finds that the ALJ's rationale for rejecting Dr. Eller's assessment fails to provide an adequate explanation for discounting his medical opinion as required by Fargnoli, supra. Because the ALJ's rationale is cryptic and utterly non-specific, this Court cannot conclude that his decision to subordinate Dr. Eller's opinion to that of Dr. Kon is based upon the requisite substantial evidence. Accordingly, Plaintiff's assignment of error on this point is approved and remand is necessary to require a sufficiently detailed explanation for the ALJ's decision to elevate Dr. Kon's opinion over that of Dr. Eller.

## II. Whether the ALJ failed to assist Plaintiff in developing the record?

Plaintiff's argument that the ALJ failed to develop the record is largely based upon his assertion: "the ALJ failed to take a single action in developing the record in favor of an

award of benefits. Despite the volumes of medical evidence the ALJ did not address a single interrogatory to address any of his concerns about the medical evidence." (Doc.12 at 25). This begs the question whether the record was insufficiently developed in the first place.

The record in this case is over 1,000 pages long. It includes medical documentation from two of Plaintiff's treating physicians and several certified nurse practitioners who were involved in his care. It also includes the opinions of a state agency medical doctor who evaluated Plaintiff's application and his medical records as well as an evaluation by a consulting/examining physician. While the length of a record is not conclusive as to its sufficiency, the Court cannot agree that this record is inadequately developed. As indicated in the previous section of this Memorandum, there are reservations whether the medical evidence has been evaluated properly. However, Plaintiff's assertion that the ALJ should have issued some sort of unspecified "interrogatory" cannot be condoned.[3]

**III. Whether the ALJ failed to properly consider Plaintiff's complaints of pain and the effect thereof on his residual functional capacity?**

---

[3] Our review of the Hearing Transcript indicates that Plaintiff's counsel acquiesced in the ALJ's offer to keep the record open for receipt of more medical records and expressed no dissatisfaction regarding the state of the record. (R. at 31-35 and 39).

It has been held that "even pain unaccompanied by objective observable symptoms which is nevertheless real to the sufferer and is so intense as to be disabling will support a claim for disability benefits." *Taybron v. Harris*, 667 F.2d 412,415 (3d Cir. 1981). Linked, as they are, to diagnostic testing indicating conditions that might be expected to produce the type and level of pain that Plaintiff alleges, his complaints of pain are entitled to great weight. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). When a claimant testifies, as here, to the limiting effects of pain stemming from established impairments of record, such complaints should not be discounted without credible contrary medical evidence. *Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000); *see also Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984).

Mindful of the above-referenced authorities, the Court is concerned that the hypothetical questions to the vocational expert did not include any limitations that seem to account for Plaintiff's consistent complaints of severe, unrelenting pain from conditions that are established of record and acknowledged by the Agency's medical consultant. Dr. Kon discussed Plaintiff's past medical history and assessed that Plaintiff was affected by "chronic pain". (R. at 616-618). The ALJ's stated reasons for concluding that Plaintiff's pain is not as severe as he alleges are: (1) his non-compliance with follow-up

appointments; (2) his self-described activity level; and (3) his unsuccessful attempt to work after his alleged onset date. (R. at 20).

The Court is dissatisfied with the ALJ's stated rationale for discounting Plaintiff's allegations of pain. Plaintiff's failure to appear for several follow-up appointments at the VA in Wilkes-Barre, some ninety miles distant from his home in Athens, is hardly surprisingly given indications in the record that he does not drive and needs to obtain a driver to transport him to these distant appointments. (R. at 40 and 50). Plaintiff's self-described activity level as rendered in the hearing transcript hardly conflicts with his alleged inability to maintain full-time employment inasmuch as the ability to use a microwave to heat meals and his participation in watching his infant daughter (while synchronizing her nap time to his to compensate for his lack of sleep at night) hardly indicates that he is capable of maintaining full-time employment.[4] Finally, Plaintiff's abortive attempt to return to work in 2013 seems more a testament to his work ethic than an indication of duplicitous intent. In fact, Plaintiff's honorable service in the U.S. Navy coupled with his near thirty year work-history

---

[4] The ALJ also alludes to Plaintiff mowing the lawn but Plaintiff specifically testified that his sons performed that task. (R. at 49).

should normally amplify his credibility where, as here, his subjective complaints of pain are supported by medical evidence of conditions that could be expected to produce that pain. *Dobrowolsky, supra*, at 409.

The ALJ's rationale for discounting Plaintiff's complaint of severe, unrelenting pain is insufficient given the authorities referenced above. Accordingly, the Plaintiff's allegation of error on this point is approved and the effect of Plaintiff's pain on his residual functional capacity requires further proceedings to determine whether his chronic pain further erodes his ability to work.

**IV. Conclusion.**

For the reasons discussed above Plaintiff's appeal is properly granted and this matter is remanded to the Acting Commissioner for further consideration. An appropriate order will be filed contemporaneously herewith.

**BY THE COURT**

<u>S/Richard P. Conaboy</u>
**Richard P. Conaboy**
**United States District Judge**

**Dated: April 24, 2018**